*In re* RAFAEL ADOLFO DE CASTRO, DISTRICT JUDGE OF PUERTO RICO AT LARGE, Respondent.

No. O-69-69. Decided November 1, 1971.

*J. F. Rodríguez Rivera, Acting Solicitor General, Gilberto Gierbolini, Solicitor General, Norberto Colón, Assistant Prosecuting Attorney,* and *Elpidio Arcaya, Assistant Solicitor General,* for The Commonwealth of Puerto Rico. *Lorenzo Lagarde Garcés, Víctor M. Pons, Jr.,* and *Sergio Peña Closs* for respondent.

PER CURIAM: After a magistrate of this Court found probable cause, the Solicitor General filed two charges against District Judge Rafael Adolfo de Castro, pursuant to the provision of § 24 of the Judiciary Act, 4 L.P.R.A. § 232, Supp. The first charge is based on an attack committed by respondent against District Judge Guillermo Méndez. The second charge is based on a fight in which respondent participated,

and which occurred a short time after the incident which gave rise to the first charge. The facts occurred on January 11, 1969, in a party held in Barrio Guayanés of Yabucoa. Respondent answered the charges, alleging self-defense in both cases.

On June 10, 1969, this Court appointed Superior Judge Francisco Espinosa to act as Special Master and to receive the evidence and to deposit it in the office of the clerk of this Court, together with the findings of fact. The transcript of evidence of the hearing held before the Special Master, consists of 234 pages and the transcript of evidence of the proceeding held against respondent in the District Court, Yabucoa Part, for the offense of assault and battery committed against Judge Méndez, consists of 532 pages. In this particular case the transcript of the evidence presented in the District Court was made. By stipulation of both parties, said transcript was submitted and admitted in evidence by the Special Master. The District Judge who presided the aforementioned proceeding acquitted the District Judge, respondent herein.

In the first charge respondent was accused of immoral, improper, and reprehensible conduct, consisting in the following facts:

"In the aforesaid place and date, between five and six in the afternoon, while Guillermo Méndez Muñoz, Administrative Judge of the District Court, Humacao Part, and respondent were talking about the form and manner in which the judicial work of said court would be conducted on Monday, January 13, 1969, respondent R. Adolfo de Castro, willfully and maliciously, assaulted and battered Judge Guillermo Méndez Muñoz, who, as a result of said attack, suffered the fracture of the nasal bones and serious injuries in the maxillary and periorbital regions, requiring his hospitalization."

The second charge reads as follows:

"A short time after the incident recited in the first charge, respondent R. Adolfo de Castro provoked citizen Manuel Mediavilla Vázquez with obscene words and intended to attack him,

giving rise to a hand to hand fight with Mediavilla, near the lot of César Pérez' residence. Several citizens who were there interfered in the fight and respondent took out of his pocket a small 25 caliber Colt pistol, adequately charged, ready for shooting, with which he caused a number of persons to run away with grave danger of their lives and security of the many persons who were there."

On April 29, 1971, the Special Master presented a brief Report and Findings of Fact. The tone of the Master's Report may be gauged from the following words of said report:

"We have no reasons of any kind whatsoever to reject and give no credit to the testimony of one of the magistrates and to accept and give credit to that of the other. Both of them are discharging positions as judges and both deserve our due respect and the highest consideration. On the other hand, we are obliged to submit to the Supreme Court our conclusion as to the occurrence between both magistrates on this occasion."

The conclusion of the Special Master is that in the cases covered by both charges respondent acted in self-defense. The position of the Special Master seems to be that since both participants—Judge De Castro and Judge Méndez—are judges, both deserve credit and he concludes that the theory of the defense—self-defense—is the correct one. We do not agree. We, therefore, must examine the situation thoroughly.

On September 30, 1963, respondent was admitted to the bar in Puerto Rico. On December 20 of that same year, when he was 32 years old and after two months and 20 days of professional experience, he was appointed Judge of the District Court, position which he occupied since then, until after the date of the events, in the District Court, Humacao Part. During the four years prior to June 28, 1968, respondent also acted in the capacity of Administrative Judge of said Part. On said date he requested the Chief Justice of this Court to release him from said responsibility. On July 5, 1968, the Administrative Court Director, via memorandum, favorably

recommended said petition and proposed that Judge Méndez be appointed as Administrative Judge, replacing respondent. Both recommendations were adopted. During the time that respondent was Administrative Judge of his Part, all the cases of violations of the Vehicle and Traffic Act were heard by him. Respondent had been sent by the Court Administration to the United States to take a course or seminary on traffic violations and had special interest in presiding over cases involving traffic violations. After Judge Méndez occupied the position of Administrative Judge, he altered this practice, taking himself the cases in which the transgressors pleaded guilty and assigning to respondent the cases in which the plea was innocent, and consequently, plenary trial.

This change in the practice of assigning the cases which was followed by Judge Méndez, as we shall see hereinafter, was apparently the motive which gave rise to the incident which occurred between him and respondent. There also occurred three other incidents between the two judges, which we shall discuss below.

On June 13, 1968, when respondent was still performing his duties as Administrative Judge, he was, about noontime, at Porfirio Delgado's business, located near the District Court of Humacao, drinking a beer with Juan B. Martínez Cruz, Deputy Marshal of said court. Judge Méndez arrived there for the purpose of buying bread and respondent invited him to a drink, which he accepted. *According to respondent's version* and that of Deputy Marshal Martínez, respondent informed Judge Méndez that during that morning certain persons had complained in relation to a lot which allegedly had been given to the latter; but that he (respondent) had settled the matter. Feeling annoyed, Judge Méndez stood up and gesticulating near respondent's face told him that that was a lie, that he was a liar. Respondent answered stating that he did not want to fight with him (Méndez) and the latter left the place.

*Judge Méndez' version* in relation to this incident differs insofar as he denies that he had gesticulated at respondent or had called him a liar, but he affirms that he told respondent that he (respondent) was not "more moral than I am, nor more Judge, nor more of a lawyer, that I am an honest person and I have been working for the government for 28 years." Judge Méndez as well as respondent affirm that after this incident their relations were cordial. In relation to this incident see pp. 314–328, 385–400 of the transcript of evidence of the case of *People* v. *De Castro*, Cr-69-181, at the District Court.

The second incident between Judge Méndez and respondent occurred on September 6, 1968. About three months had elapsed already since the first incident and about two months from the time Judge Méndez replaced respondent in his functions as Administrative Judge. De Castro wrote a memorandum to Judge Méndez, the content of which is as follows:

"This memo is written with a borrowed pencil. In August there were pencils here for one year, now there is not one single pencil. Please, get me some pencils."

The third incident occurred on September 27, 1968, scarcely three weeks after the occurrence of the second incident. The manner in which respondent wrote this time, to set aside an order entered by Judge Méndez, is noticeable. Judge Méndez' order concerned a case of abandonment of minors whose prosecution had started before respondent. In said case respondent had entered an order granting a motion requesting a more definite exposition of the facts charged on defendant. On September 27, 1968, the prosecuting attorney filed a motion in opposition to the order entered by respondent. On the same date Judge Méndez entered an order granting the motion and on that same day *respondent,* in his turn, set aside the same by an order which reads as follows:

"The order entered on September 27, 1968, by the Administrative Judge of this Part, constitutes an administrative intervention in the judicial function. The Administrative Judge acted without jurisdiction. It is so ordered by the court and his order is set aside. Said motion will be heard on the day set by the Administrative Judge."

The first incident recited was introduced by respondent to show the apprehension which would justify his theory of self-defense. The other two incidents were introduced by the prosecuting attorney to show the nature of the relations which existed between the two judges before the event prosecuted in this proceeding. The evidence as to these incidents appears mainly from the record of the case of *People* v. *De Castro*, 69-181, Aggravated Assault and Battery, before the District Court, Yabucoa Part. See Tr. Ev. pp. 4–5 of the hearing of August 27, 1970, of the present appeal. Having the previous events in mind, let us examine the facts which are the object of the charges preferred before this Court.

The facts charged occurred on January 11, 1969, when scarcely three months and a half had elapsed from the third incident recited, in a party given by Adalberto Mullenhoff in a building belonging to César Pérez, at the beach in ward Guayanés in Yabucoa. Respondent went to the party about 3:00 p.m. Judge Méndez also went to the party accompanied by his family, about 5:30 p.m. The place was full of well-known persons in the community.

As soon as Judge Méndez arrived at the place and after greeting several friends, a conversation was initiated between him and respondent. According to Judge Méndez' testimony, the conversation originated at the request of respondent, who touched him on the shoulder and told him that he wanted to talk to him. Judge Méndez followed respondent to a balcony, where they talked. Respondent denied having called Judge Méndez. He testified that Judge Méndez was alone on the balcony when he approached him to speak to him.

The conversation was commenced, when respondent indicated to Judge Méndez that he had been invited to the inauguration of the Mayor of Yabucoa, on the following Monday, January 13, 1969. On the same date Judge Méndez had been invited to take the oath at the inauguration of the Mayor of Humacao. At the suggestion of Judge Méndez, both reached an agreement as to how they were going to take care of the work of the court on said day, January 13.

Later on, according to Judge Méndez' testimony, respondent asked him why he (Méndez) had been hearing traffic cases, that he (Méndez) knew nothing about traffic, but that he, respondent, did, because he had taken a course on said matter. Judge Méndez answered that he only heard cases of pleas of guilty and that to do so it was not necessary to be an expert; that also he (Méndez) had served 35 years in the government, 28 of which had been acknowledged by the Retirement System; that such experience often counts more than studies. Respondent answered that he could not realize how he (Méndez) had been appointed Administrative Judge, that he was a mediocrity and that what happened was that the Chief Justice, the Administrative Court Director, and he wanted to destroy him (respondent). Judge Méndez tried to put an end to the argument, going away from respondent, but the latter grasped him by an arm and at the same time whispered to him "I am going to . . . in your mother and I am going to smash your face." Right afterwards respondent attacked Judge Méndez. Some of the guests set respondent and Judge Méndez apart and others offered first aid to the latter to stop a nasal hemorrhage. One of the blows fractured Judge Méndez' nasal bones. He needed medical attention.

In his testimony respondent admitted that they argued about the traffic cases; that reference was made to respondent's specialized studies and Judge Méndez' years of experience. He denied having said then that Judge Méndez was mediocre. He affirms, on the other hand, that he said that

Judge Méndez was as stupid as on the day when he was born. He admits having taken alcoholic beverages at the party and that he was disgusted because his traffic court had been discontinued. Respondent says that when he called Judge Méndez stupid, the following occurred:

"Well, when I told him these last words, he struck a hard blow on my chest and at the same time he advanced, I had the impression that he was going to go over me.

". . . he hit me with his hands, I cannot state precisely if it was this way or this other, but I think it was the same gesture that months before he had made, only that this time he hit me hard on my chest and at the same time he told me that he was going to shoot me, and I, we are, I mean, I walked a little backwards and he walked toward me.

"And then, I guarded myself in the only manner I could, I mean, he having on me, his hands on my chest and he was going to shoot me, well, I hit him on his face, telling him that first, at the same time that I am hitting him, that first, I would smash his face and then it is that he would shoot me. . . ." Tr. Ev. of the case at the District Court, pp. 342–343.

The only testimonies as to how the argument originated and who initiated the physical attack are that of respondent himself and that of Judge Méndez; and they, as we have seen, are conflicting as to some essential points. Judge Méndez denies having threatened or having attacked respondent. Tr. Ev., *supra*, pp. 112–113.

During the time the two judges were talking or arguing, a witness, attorney Osvaldo Gil, approached them and conversed with them for a few minutes, but he testified not having observed anything abnormal which would lead him to think that they were arguing. Tr. Ev., *supra*, pp. 227–229.

Another witness, José Manuel González Rivera, was presented by the defense to corroborate respondent's testimony as to the point that Judge Méndez was the one who initiated the physical attack. An examination of the content of this witness' testimony leads us to conclude that said testi-

mony does not deserve credit. See Tr. Ev., *supra*, pp. 282–308. According to his testimony: He is a janitor in Ponce de León School. He also works part time in Restaurant El Veterano, where he has waited on Judge Méndez and on respondent. He also works as a waiter at parties. He saw respondent at the party since about 3:00 p.m. When respondent was talking with Judge Méndez, he approached them to offer them hors d'oeuvres. Neither of the two had hors d'oeuvres. Later on he returned to offer food to the two judges. Respondent told the witness to serve food to his children. The witness took turn therefor and he served food to respondent's children on a table which he knew they were occupying. Then he went to the bar to continue preparing glasses with ice. When he finished he returned to where respondent was to inform him that his children were eating. He waited for a while and respondent told him, "O.K., it's alright." Then the witness stopped to see if there were any bottles or something on the banister of the balcony, and he was surprised to see that "Judge Méndez made a gesture and put his hands on Judge de Castro's chest. . . . He put them, spread them over Judge de Castro's chest. What he did I do not know, I know he spread them over his chest." Tr. Ev., *supra*, p. 289. This movement is described as "hitting with the back of the hand on his chest." Tr. Ev., *supra*, p. 290. The witness continues testifying that "when Judge Méndez extended his hands on Judge de Castro's chest, I do not know how he did it, *I know that Judge de Castro, I do not know, something happened and when that happened I went away* with my small tray to take the bottles which I had gathered to the bar and then continue cleaning the parlor." When he was asked what was "that something" that he observed, he testified that it was that "*this man, Judge de Castro, raised his hand, I do not know for what purpose, because when he raised his hand I went away . . .*" Tr. Ev., pp. 290–291. (Italics ours.)

Aside from this witness no other witness saw Judge Méndez attacking respondent. On the other hand, all the others saw that it was respondent who was attacking Judge Méndez. See the testimonies of Myrta Pérez, Carlos Rafael Menció, Attorney Osvaldo Gil, Edwin Torruellas, in the transcript of evidence of the criminal case. It is also significant that nobody had to hold Judge Méndez to stop the fight and that several persons had to hold respondent by his waist and by the arms in order that the latter cease attacking Judge Méndez.

Witness for the prosecution, Superior Judge José Dávila Ortiz, testified that after the second fight respondent informed him that Judge Méndez had challenged him to fight and to shoot each other and that he (respondent) had hit Judge Méndez. Respondent omitted to indicate to the witness that Judge Méndez had extended his arms toward him, but he admitted that he was the one who attacked Judge Méndez. Several witnesses testified that Judge Méndez, several minutes after having been attacked, talked about looking for a revolver in his automobile, but the impression they got was that this was a mere verbal threat, but without real intent to carry it out.

Could the theory of self-defense, grounded on the facts set forth, lie?

If we give credit to Judge Méndez' version, it is indubitable that said theory would not prosper. In support of Judge Méndez' version, we find that in each one of the incidents prior to the one at bar respondent was the one who took the initiative to vex Judge Méndez. Respondent is the one who was vexed by Judge Méndez' actions for having eliminated his traffic court, as well as for having intervened in cases of his jurisdiction. It is respondent who initiated the argument with Judge Méndez at the party. It is only respondent who in the argument used gross words against his colleague judge. And he was the only person who was seen committing acts of aggression.

On the other hand, it seems improbable that Judge Méndez threatened to shoot respondent, he (Judge Méndez) being unarmed, and when it was possible that respondent be armed, as he actually was. As to the fact that Judge Méndez had extended his arms toward respondent, neither respondent nor his witness for corroboration could give a precise description of the manner in which Judge Méndez extended his arms. If his intention had been to attack respondent on his chest, normally, he would have hit him with closed fists and not with the back of the hands.

However, it is unnecessary to settle the conflict of the evidence in favor of one or the other version of the facts, since even accepting respondent's version, from the same there does not arise a case of genuine self-defense.

The force or violence permitted by law in cases of self-defense is only that degree which is necessary. No greater injury may be caused than that which is necessary to repel the attack. 33 L.P.R.A. § 823; *People* v. *Lozada,* 37 P.R.R. 860 (1928); *People* v. *Ríos Rivera,* 88 P.R.R. 160 (1963); *People* v. *Iturrino de Jesús,* 90 P.R.R. 687 (1964). Whoever causes more injury or uses more force than is necessary cannot invoke self-defense, but rather, he is guilty of assault and battery. *People* v. *Jiménez,* 48 P.R.R. 14 (1935). When the evidence does not show who was the first to attack, but it is shown that defendant violently struck the prejudiced party, defendant is prima facie guilty of assault and battery and the burden is on him to show that he acted in self-defense. *People* v. *Hernández,* 26 P.R.R. 704 (1918). The theory of self-defense is not favored when the aggressor provokes another person with insults and threats. *People* v. *Martínez,* 26 P.R.R. 716 (1918).

In the present case, even assuming that the correct version of the facts is such as it is presented by respondent, it is not a case of self-defense. The reasons therefor are the following: (1) he was the one who provoked the fight, calling Judge

Méndez stupid; (2) he is prima facie guilty of the attack, since he attacked Judge Méndez violently and nobody saw the latter answer the assault, nor did respondent suffer any physical damages in this fight; (3) the aggression was not for the purpose, nor did it limit itself to repel an attack: respondent stated that before Judge Méndez would start shooting him, he would smash his face first, which shows anger and intent to cause injury, rather than self-defense; (4) when Judge Méndez had already fallen to the floor, respondent wanted to continue attacking him, which he could not do because of the fact that several persons grasped him by the arms and by the waist; (5) the facts and circumstances do not justify that a moderately brave man would fear that he was in danger of grave bodily harm or death: Judge Méndez allegedly threatened to shoot respondent, but he did not make any gesture to carry it out, he only extended the back of his hands toward respondent's chest, in a place where there were several hundred persons, respondent being a man taller and younger than Judge Méndez, and he (respondent) being armed, while Judge Méndez was not. On the date of the events respondent was 37 years old and Méndez 52.

Of course, in order to find improper or reprehensible conduct in a proceeding like the one at bar, it is not necessary to show a clear case of assault and battery, as if it were a criminal case. Participating in a fight does not necessarily constitute immoral conduct either (immoral conduct on the part of a judge would be bribery, robbery, embezzlement, fraud, intervening, for illegal purposes, with witnesses, with the jurors or with the evidence, etc.), but attacking a person in the brutal and unnecessary manner in which respondent did so, constitutes a highly improper and reprehensible conduct on the part of a judge. A judge must feel great inhibitions to use violence and should only use it when it is *indispensable* in case of self-defense, as the latter is defined by law.

In relation to the second charge preferred against respondent, the evidence is also conflicting as to the fact of how the fight originated. Respondent left the place where the party was going on, and his family was boarding his car to leave the place. According to respondent's version, at that time several persons started to attack him, he fell to the ground and they kicked him. He could get out, he took out a pistol from his back pocket and the assailants started to run away. He delivered the pistol to Hilton Colón and a short time later he went away from the place.

According to Manolín Mediavilla's version, he came face to face with respondent and called him abuser. Respondent uttered an obscenity and made a gesture and "it broke up."

In view of the fact that there arise contradictions in the very evidence for the prosecution as to the facts connected with the second charge, we understand that there is no reason to alter the findings of the Special Master as to the same, particularly when all the oral evidence relating to said charge was presented before him, different to what happened with the evidence as to the first charge.

 Respondent raised a defense at law which consisted in alleging that since he had been previously judged and acquitted in the District Court of Yabucoa for the offense of aggravated assault and battery, that precluded the filing of the present complaint. He is not right. That contention has already been decided adversely for respondent. *In re Tormes*, 30 P.R.R. 248, 252 (1922); *In re González*, 65 P.R.R. 357, 367–8 (1945); *In re Abella*, 67 P.R.R. 211, 219 (1947); *In re Liceaga*, 82 P.R.R. 245, 248, 249 (1961).

 Respondent's highly improper and reprehensible conduct justifies and makes necessary his discharge from his position as District Judge. Although it is unpleasant for us, we must do it, since we have to maintain a minimum standard of conduct in the judges, which minimum standard shall

196

exclude the use of unnecessary, imprudent, and immoderate violence. Respondent showed that he lacked—at least in this stage of his life—the moderation, prudence, and self-discipline which are indispensable in the person of a magistrate.

For the reasons stated, the Court will discharge respondent from his position as District Judge.

The Chief Justice, Mr. Justice Pérez Pimentel, and Mr. Justice Ramírez Bages did not participate in this decision.